Lisa H. and Nichole H., Minors, by Their Mother and Natural Guardian, Doris H., Petitioners *v.* The State Board of Education et al., Respondents.

Argued December 16, 1981,

*Doris Applebaum,* for petitioners.

*Paul L. Stevens,* of counsel: *Curtin and Heefner,* for respondent, Bucks County Schools, Intermediate Unit No. 22.

*D. Donald Jamieson,* with him *Jeffrey Cooper, Mesirov, Gelman, Jaffe, Cramer & Jamieson,* for respondents, Bensalem Township School District et al.

*Ernest N. Helling,* Assistant Attorney General, with him *Michael A. Davis,* Assistant Attorney General, Chief Counsel, for respondents, State Board of Education et al.

*John D. Killian, Killian & Gephart,* for Amicus Curiae, Pennsylvania Association for Gifted Education.

OPINION BY JUDGE BLATT, July 8, 1982:

The plaintiffs in this case are two elementary school students in the Bensalem Township, Bucks County School District (School District) who were evaluated but not selected to participate in the special education program for "gifted and talented school-

aged persons" provided by the defendants.[1] The plaintiffs assert that Section 13.1(ii) of the State Board of Education Regulations (Regulations), 22 Pa. Code §13.1(ii) (Code), which defines "gifted and talented school-aged persons"[2] and all sections of the Code relating to it[3] are unconstitutional under both the United States and the Pennsylvania Constitutions because the program thereby provided infringes upon the petitioners' fundamental property right to a free public education appropriate to their needs. They argue that the program excludes them from available educational instruction without just cause, provides them with an education inferior to that afforded students in the special education program and results in the expenditure of less tax dollars on their education than on the education of students categorized as gifted and talented. By way of relief, they seek (1) a declaratory judgment that the provisions of the Code which relate to special education programs for "gifted and talented school-aged persons" be declared unconstitutional as a denial of equal educational opportunity and as an unauthorized delegation of judicial and legislative power; (2) that the defendants be permanently enjoined from applying the above sections; (3) that the Court protect the plaintiffs' right to equal education opportunity and (4) that the plaintiffs be award-

---

[1] The State Board of Education, Department of Education, Bensalem School District and School Board, Bucks County Intermediate Unit No. 22 (I.U. No. 22) and various officers and employees thereof.

[2] Section 13.1(ii) of the Regulations, 22 Pa. Code §13.1(ii), defines gifted and talented school-aged persons as:

Those who, in accordance with criteria prescribed in standards developed by the Secretary of Education, have outstanding intellectual or creative ability, the development of which requires special activities or services not ordinarily provided to regular children by local educational agencies.

[3] 22 Pa. Code §§13.21, 13.22, 13.23, 13.31, 13.32, 13.33, 341.1(iv) and 341.1(x).

ed $60,000 in damages. The defendants filed numerous preliminary objections, several of which were argued and resolved by this Court at an earlier date;[4] the three remaining objections which were subsequently argued before the Court en banc are presently before us and are as follows: (1) by way of demurrer, that the plaintiffs have failed to state a cause of action inasmuch as they (a) have failed to allege any action on the part of the defendants which adversely affected the plaintiffs in any manner and (b) have failed to aver that they satisfy the criteria set forth at Section 341.1(iv) of the Regulations, 22 Pa. Code §341.1(iv), i.e., that they are gifted and talented school-aged persons or that they were ever denied the right to be evaluated or considered for admission to the School District's special education program for children so designated; (2) that the plaintiffs lack the capacity to sue, inasmuch as their amended complaint fails to allege facts which, if proven, would provide them with standing to seek relief in that they allege no immediate, substantial or direct interest in the subject matter; and (3) that this Court lacks equity jurisdiction over the matter inasmuch as the plaintiffs have an adequate remedy at law and have failed to exhaust their administrative remedies.

The plaintiffs ground their plea for equitable relief upon an asserted constitutionally guaranteed fundamental property right to a free public education appropriate to their needs which they contend has been directly affected and impaired by enactment and

---

[4] The objections considered in our unreported opinion of July 16, 1981 were overruled with the exception of that of I.U. No. 22 and George Raab, its director, that this Court lacked in personam jurisdiction over them because of improper service upon them and the defendants' motion to strike the petitioners' request for attorney's fees. I.U. No. 22 and Raab were subsequently properly served and are, therefore, present parties to this action.

implementation of Section 13.1(ii) of the Regulations. 22 Pa. Code §13.1(ii). The Fourteenth Amendment of the United States Constitution, U.S. CONST. amend. XIV, prohibits the State from depriving any person of life, liberty or property without due process of law. A property interest in a benefit requires a legitimate claim of entitlement to it, which, of course, involves more than an abstract need or desire for it, and more than a unilateral expectation of it. *Board of Regents v. Roth,* 408 U.S. 564 (1972). It is well-established that property interests are not created by the Constitution but rather that they are created and their dimensions are defined "by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits," *Id.* at 577, and once so created, such interests are afforded constitutional protection. A right to education, however, is not among the rights which are either explicitly or implicitly guaranteed under our Federal Constitution and it is not, therefore, considered to be a fundamental right or liberty. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1 (1973).

It is true, of course, that a state may create a legitimate claim of entitlement to a public education, even though not constitutionally obliged even to establish and maintain a public school system, and that once it has chosen to do so and has required its children to attend, it has then extended a right to education to its students, and has thereby established a property interest in education which is subject to the protection of the Fourteenth Amendment to the Federal Constitution. *Goss v. Lopez,* 419 U.S. 565 (1975). And Article III, Section 14 of the Pennsylvania Constitution[5] states:

---

[5] Pa. Const. art. III, §14.

The *General Assembly shall provide* for the maintenance and support of a thorough and efficient *system* of public education to serve the needs of the Commonwealth. (Emphasis added.)

This mandate of our state constitution, however, does not confer an individual right upon each student to a particular level or quality of education but, instead, imposes a constitutional duty upon the *legislature* to provide for the maintenance of a thorough and efficient *system* of public schools throughout the Commonwealth. *Danson v. Casey,* 484 Pa. 415, 399 A.2d 360 (1979). This Court has previously recognized that the right to a public education in Pennsylvania is not a fundamental right but rather, a statutory one and that as such, it limited by statutory provisions. *O'Leary v. Wisecup,* 26 Pa. Commonwealth Ct. 538, 364 A.2d 770 (1976). And, it is well-recognized that:

In considering laws relating to the public school system [enacted pursuant to the mandate of the Pennsylvania Constitution], courts will not inquire into the reason, wisdom, or expediency of the legislative policy with regard to education, but whether the legislation has a reasonable relation to the purpose expressed in Article X, Section 1 [the predecessor provision of Article III, section 14], and whether the fruits and effects of such legislation impinge the Article by circumscribing it, or abridging its exercise by future legislatures within the field of "a thorough and efficient system of public schools."

*Danson v. Casey,* 484 Pa. at 426, 399 A.2d at 366 (quoting *Teachers' Tenure Act Cases,* 329 Pa. 213, 224, 197 A. 344, 352 (1938)). Under our statutory scheme, a school district is not required to devise an educational program which makes the best use of each student's

abilities, but only to identify exceptional children and develop educational programs appropriate to their particular needs. *Shanberg v. Secretary of Education,* 57 Pa. Commonwealth Ct. 384, 426 A.2d 232 (1981). Gifted and talented students are included within the definition of exceptional children.[6] *Central York School District v. Department of Education,* 41 Pa. Commonwealth Ct. 383, 399 A.2d 167 (1979). Inasmuch as the Pennsylvania Constitution does not demand that educational offerings be uniform, *Danson v. Casey,* a legislative scheme which requires identification and special individualized education of only

---

[6] The plaintiffs' argument that, absent a statutory mandate to do so, the State Board and the Department of Education usurped the power of the legislature by expanding the definition of "exceptional children" to include "gifted and talented school-aged persons," Section 13.1(ii) of the Code, 22 Pa. Code §13.1(ii), is without merit. Section 1371(1) of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §13-1371(1), provides in pertinent part:

> The term "exceptional children" shall mean children of school age who deviate from the average in physical, mental, emotional or social characteristics to such an extent that they require special educational facilities or services. . . .

The definition of "gifted and talented school-aged persons" stated in Section 13.1(ii) of the Code identifies children who deviate from the norm mentally and creatively and, as such, fall well within the parameters of the legislative definition of "exceptional children." It should be borne in mind that if a regulation of an administrative agency is consistent with the statute under which it is promulgated, the agency's interpretation of that regulation is entitled to controlling weight except where the interpretation is clearly erroneous or inconsistent with the regulation. *Barr v. Department of Public Welfare,* Pa. Commonwealth Ct. , 435 A.2d 678 (1981). (Emphasis added.) The legislature specifically recognized and placed its imprimatur upon the program by its 1977 amendment of Section 13-1372(3) of the School Code, 24 P.S. §13-1372(3), which provides, *inter alia,* that "the institution of special classes and programs at the secondary level for exceptional children *who are gifted and talented students* may be deferred until September 1978. . . ." (Emphasis added.)

358

those children who deviate from the norm is one which is reasonably related to Article III, Section 14's avowed purpose of legislative implementation and administration of a thorough and efficient system of education in this State. The right which has been constitutionally created and statutorily established in Pennsylvania is, therefore, a right of entitlement to a public education, *not,* with the exception of exceptional children, a right of each student within the system to an individualized level or quality of education. "[T]he *educational process* is a property right created by the state" and the property interest in education so created "is participation in the *entire process.* The myriad activities which combine to form that educational process cannot be dissected to create hundreds of separate property rights, each cognizable under the [Federal] Constitution." *Dallum v. Cumberland Valley School District,* 391 F. Supp. 358, 361 (M.D. Pa., 1975) (emphasis added). The plaintiffs do not assert in their amended complaint that they are exceptional children, and we must conclude, therefore, that neither the Federal nor the State Constitution affords them a constitutionally protected right to their individual needs. To the degree, therefore, that they predicate their challenge upon such an alleged right, they have failed to state a justiciable cause of action. *Danson v. Casey.*

The defendants also object that the plaintiffs lack standing to sue in this matter. Standing requires an aggrieved party, and one "who is not adversely affected in any way by the matter which he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution of his challenge." *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 192, 346 A.2d 269, 280 (1975). The plaintiffs, as persons denied admission to the gifted and talented program because of their failure, upon evalu-

ation, to qualify for the program, also challenge classification criteria and curricula set forth in the Regulations. Although the plaintiffs here assert that they were not deemed to qualify for admission to the program under the current criteria, they do not allege in their amended complaint that they are gifted and talented school-aged children who are eligible for the program. They have, therefore, failed to establish themselves as parties aggrieved by the criteria set forth in the Code and have failed to demonstrate the direct, immediate and substantial interest necessary to confer standing upon them in this action.

The defendants further object that the plaintiffs have an adequate remedy at law and have failed to exhaust their administrative remedies. The plaintiffs allege that, after having been evaluated and not accepted for the gifted program, they were not afforded due process notice of that action. The Regulations, however, set forth the due process procedures to be followed with regard to all exceptional or thought-to-be exceptional school-aged children, with Section 13.32 (1) of the Regulations, 22 Pa. Code §13.32(1), providing, in the event the school district initiates the due process procedure, that:

> When any exceptional or thought to be exceptional school-aged person is recommended for a change in educational status by a school district, intermediate unit, or any school official, notice of the proposed action shall first be given to the person and the parent. If the parent desires, the parent may, in writing, indicate satisfaction with the recommendation and waive the parent conference.

The school, therefore, is required to give notice to the student and the parent *only* when it is *proposing a change* in the student's educational status, and the section does not apply to the plaintiffs because they

were not recommended "for a change in educational status;" they were merely recommended for consideration as possible candidates for admission to the program.

The Regulations also make specific provision for parent-initiated due process opportunities for all exceptional and thought-to-be exceptional students, including those who have never had a special educational assignment. Section 13.31(b) of the Regulations, 22 Pa. Code §13.31(b), provides that:

> (b) The parent of any school-aged person shall, upon presentation to the school district of written evidence that their child is an exceptional or thought to be exceptional person, and receiving less than an appropriate program of education or training, have the right to request due process procedures.

Section 13.33 of the Regulations, 22 Pa. Code §13.33, makes specific provision for parent-initiated due process procedures:

> (1) Any parent who believes their school-aged person is any of the following:
>
> . . . .
>
> (ii) An exceptional person classified as nonexceptional.
>
> . . . .
>
> (iv) Receiving less than an appropriate program of education and training, or both. The parent may forward to the school district written evidence which supports the contentions of the parent.
>
> (2) *Upon receipt of the documents required by paragraph (1)* of this section, the school district superintendent shall initiate, within ten days, a program placement conference. (Emphasis added.)

The plaintiffs here have not alleged parental presentation of any written evidence that these children are exceptional or thought-to-be exceptional persons, yet such documentation is necessary to trigger the right *to request* due process procedures under Section 13.31 or the right to a school district-initiated program placement conference under Section 13.33. Therefore, if the plaintiffs wish to continue to seek admission to the program, they have due process procedures available to them, of which they have failed to avail themselves, and a suit in equity will not lie where an adequate and complete remedy at law may be had. *Setlock v. Sutila,* 444 Pa. 552, 282 A.2d 380 (1971).

We will, therefore, sustain the preliminary objections of the defendants in this matter.

ORDER

AND Now, this 8th day of July, 1982, the remaining preliminary objections of the defendants in the above-captioned matter are sustained and the case is hereby dismissed.

Judges MENCER and PALLADINO did not participate in the decision in this case.