547 A.2d 520

School District of Philadelphia, Petitioner *v.* Commonwealth of Pennsylvania, Department of Education, Respondent.

Argued June 17, 1988, before Judge COLINS, and Senior Judges BARBIERI and KALISH, sitting as a panel of three.

*Robert T. Lear,* for petitioner.

*Timothy D. Searchinger,* Deputy General Counsel, for respondent.

*Lorrie McKinley, Penn Legal Assistance Office,* for intervenor.

OPINION BY JUDGE COLINS, September 15, 1988:

The School District of Philadelphia (District) appeals an order of the Secretary of Education (Secretary) which directed it to provide Branden F., a hearing-impaired child residing in the District, with transportation to a private clinic offering specialized auditory therapy. Branden's mother has intervened on behalf of her son.

Branden is an eight year old who suffers a progressive hearing loss. At times relevant here, Branden was severely to profoundly hearing impaired when not wearing hearing aids and, for his impairment, received bi-weekly "multisensory" therapy provided by the District hearing therapist. These services are so termed because they include not only auditory traning intended to maximize the student's residual hearing but also emphasize lip-reading, reading, and vocabulary skills. In addition to his therapy, Branden was enrolled in the regular third grade and, by virtue of his successful performance, has been recommended for the gifted student program.

In 1986, Mrs. F. enrolled her son in the Helen Beebe Speech and Hearing Center (Center), a private clinic offering "unisensory" auditory training. That therapy, as contrasted with the District's "multi-sensory" ap-

proach, solely emphasizes the development of residual hearing, apart from the development of the other senses, with a goal of decreased dependence upon visual cues. Branden's mother requested that the District provide transportation to the Center's program in Paoli, twice monthly during the school day.[1] The District refused and Mrs. F. requested a due process hearing, pursuant to 22 Pa. Code §13.32. Following hearings, the Hearing Examiner concluded that the District's existing program was of obvious benefit to Branden and, thus, was appropriate, thereby relieving the District of any obligation to provide transportation to an alternative center. Accordingly, he denied the request for transportation.

Upon appeal, the Secretary reversed the Hearing Examiner's decision and, as noted, directed that transportation be provided. He found that the Center's unisensory approach would allow Branden to make better use of his residual hearing, thereby allowing him to develop more natural language and voice quality. He further found that such therapy would not only assist Branden in his current classroom, but would insure that he continued to function independently and successfully in the future. Finally, the Secretary concluded that the *combined* programs, that is, the District's multisensory program and the unisensory program at the Center, constituted "sufficient services reasonably calculated to give real educational benefit."[2]

---

[1] Branden's tuition at the Center was provided through an endowed scholarship program.

[2] The Secretary directed that transportation be provided to *any* center offering unisensory therapy, suggesting that providers closer to Branden's school and home should be investigated. Then noting the positive effects of classroom attendance upon learning, the Secretary directed that the services be provided after school hours.

The District now contends that the Secretary erred as a matter of law in evaluating the appropriateness of Branden's educational program by reference to his *future* success. It also argues that it cannot be required to provide access to additional instruction where, as here, the student is clearly benefitting from the program it presently provides and characterizes the Secretary's decision as tantamount to a requirement that it provide the best possible education program, in contravention of *Board of Education v. Rowley,* 458 U.S. 176 (1982), as well as certain decisions of this Court (*citing Centennial School District v. Department of Education,* 94 Pa. Commonwealth Ct. 530, 503 A.2d 1090 (1986), *affirmed,* 517 Pa. 540, 539 A.2d 785 (1988) and *Shanberg v. Secretary of Education,* 57 Pa. Commonwealth Ct. 384, 426 A.2d 232 (1981)).

Preliminarily, our scope of review requires that we affirm an order of the Secretary unless a violation of constitutional rights has occurred, an error of law has been committed, or findings of fact are not supported by substantial evidence. *Bucks County Public Schools v. Department of Education,* 108 Pa. Commonwealth Ct. 511, 529 A.2d 1201 (1987), *appeal denied,* 517 Pa. 624, 538 A.2d 877 (1988).

It is well settled that a school district is not required to devise an educational program which makes the best use of each student's abilities, but only to identify exceptional children and develop educational programs appropriate to their particular needs. *Centennial; Shanberg.* If that program involves enrollment in a special class approved by the Department, the District must provide free transportation. *Pires v. Department of Education,* 78 Pa. Commonwealth Ct. 127, 467 A.2d 79 (1983); *see also* Section 1374 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §13-1374.

An "appropriate program" is defined in 22 Pa. Code §13.1 as:

A program of education or training for exceptional school-aged persons which meets their individual needs as agreed to by a parent, school district, or intermediate unit personnel; or as ordered by a hearing officer; or upon appeal as ordered by the Secretary of Education.

In *Centennial,* we held the Secretary ultimately responsible for determining what educational program is appropriate for an individual child, absent an agreement to that effect between his parents and the school district in which he resides. Notably, we also indicated that "the determination of whether or not a program is appropriate depends upon *how well the program satisfies the recognized needs* of the individual child." *Id.* at 537, 503 A.2d at 1094 (emphasis added).

In the exercise of that authority, the Secretary here determined that the unisensory therapy employed by the Center would allow Branden to make better use of his residual hearing and thereby permit him to "become more independent" and "to develop more natural language and voice quality." That these benefits may derive from unisensory training is clearly supported by substantial evidence. Indeed, the District did not denigrate the modality but merely proffered its view that multisensory training constituted an appropriate educational program.[3] We note an element of urgency in the instant matter given that Branden's hearing loss is progressive in nature and his prognosis uncertain. Witnesses from the Center testified that unisensory therapy may augment residual hearing and enhance more normal communication. Further, they indicated that the ac-

---

[3] A witness from the Center testified that the multisensory approach most often enhances those senses other than hearing.

quisition of communication skills may afford lifelong benefit even if the child loses his hearing at some future point. Certainly, Branden's residual hearing can only be enhanced while he retains that capability. Accordingly, we cannot fault the Secretary for concluding that the *combined* therapies constitute services calculated to afford Branden real educational benefit.

The District makes much of the fact that Branden is succeeding in its third grade program and, in fact, has been recommended for the gifted student's program. It emphasizes language in *Rowley* to the effect that a school district's obligation to provide an appropriate education is satisfied by personalized instruction "reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Id.* at 203-4. *Rowley,* of course, does not limit the Secretary's authority but merely establishes minimum standards by which educational programs must be evaluated in the context of the Education of the Handicapped Act, 20 U.S.C. §§1401-1451, the rationale of which underlies the Department's regulations pertaining to the determination of an appropriate educational program. *See Murphy v. Department of Education,* 94 Pa. Commonwealth Ct. 430, 504 A.2d 382 (1986). The Secretary's determination that Branden's current success does not assure his future success is supported by the testimony of the District's therapist who noted that her students had often done well in lower grade levels but needed additional assistance to understand the more technical information characteristic of higher studies. Rather than requiring that the District provide the best educational program, we believe the Secretary's decision evinces a reasoned evaluation of Branden's individual needs. *Centennial.*

An agency's interpretation of its own regulation is entitled to controlling weight unless clearly inconsistent or erroneous. The Secretary here determined that the

unisensory therapy offered by the Center, in conjunction with the District's program, met Branden's individual needs and together comprised an appropriate program. We cannot find that determination clearly erroneous.

We do note that the Secretary's order solely directed the District to provide *transportation* to a learning center providing unisensory training. We surmise the Secretary so limited his order in view of the fact that Branden's tuition had been provided under a scholarship program. It is, of course, the program itself which the Secretary found to be of appropriate educational benefit; the provision of transportation was merely a means to that end. To the extent that Branden's tuition may no longer be covered by scholarship, the District is directed to provide tuition as well as transportation to a learning center as directed by the Secretary.

Accordingly, the order of the Secretary is affirmed as above modified.

### ORDER

AND NOW, this 15th day of September, 1988, the order of the Secretary of Education is hereby modified and the School District of Philadelphia is directed to provide tuition, as well as transportation, for Branden F. to attend unisensory hearing therapy sessions. In all other regards, the order of the Secretary is affirmed.

Senior Judge KALISH dissents.