603 A.2d 701

**CONRAD WEISER AREA SCHOOL DISTRICT, Petitioner,**

v.

**DEPARTMENT OF EDUCATION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 21, 1991.

Decided Feb. 10, 1992.

---

Andrew E. Faust, for petitioner.

Charles B. Coleman, for respondent.

Before CRAIG, President Judge, COLINS, J. (P.), and SILVESTRI, Senior Judge.

CRAIG, President Judge.

The Conrad Weiser Area School District appeals a decision of the Special Education Appeals Panel of the Commonwealth of Pennsylvania that reversed in part a decision by a hearing officer of the Department of Education that determined that Samuel L., a fifth grade student in the school district, (1) does not have a learning disability, (2) does not need special education for written expression, math, and occupational therapy (OT), and (3) is receiving an appropriate education under his proposed gifted individualized education program (IEP).

Samuel L. is "mentally gifted" within the meaning of the department's definition of that term, found in 22 Pa.Code § 342.1(b). The district developed an interim IEP for Samuel, which his parents approved. However, in addition to being mentally gifted, Samuel's parents contend that he has a specific learning disability that requires special education. Samuel's parents sought to have the district provide special education to address Samuel's alleged disability; the school district disagreed, contending that the district can accommodate his needs through regular education modifications.

In accordance with department procedures, 22 Pa.Code § 14.64, the district and Samuel's parents submitted their disagreement to a hearing officer. After conducting two hearings, on November 27 and December 7, 1990, the hearing officer issued a decision on January 4, 1991, concluding that Samuel does not have a learning disability that requires special education.

Samuel's parents filed exceptions to the hearing officer's decision, to which the district responded. In accordance with 22 Pa.Code § 14.64(n), the Secretary of the department appointed a special education appeals panel, which issued a decision, in which it concluded that Samuel has a specific learning disability in the area of written expression and needs special education to address that disability.

The school district now appeals that determination, raising the following issues: (1) whether the appeals panel erred in failing to recognize that Samuel's success in regular education precludes his classification as an exceptional student with a specific learning disability; (2) whether the appeals panel erred in concluding that the regular education accommodations and modifications offered by the district constitute special education for purposes of establishing whether Samuel needs special education; and (3) whether Samuel's parents failed to meet their burden of proof on the issue of whether Samuel requires special education to meet his needs in the area of written expression.

As the district correctly notes, this court's scope of review from decisions of special appeals panels is limited to a

determination of whether the adjudication is supported by substantial evidence, errors of law were committed, or constitutional rights were violated. *Board of Education v. Commonwealth, Department of Education,* 135 Pa. Commonwealth Ct. 56, 581 A.2d 681 (1990).[1]

## 1.

 The district first argues that the appeals panel erred in failing to recognize that Samuel's success in regular education precludes classification of him as an exceptional student with a specific learning disability.

Section 1371(1) of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, art. XIII, § 1371 *as amended* by the Act of August 8, 1963, P.L. 592, § 1, 24 P.S. § 13–1371, provides:

**Definition of exceptional children; reports; examination**

(1) The term "exceptional children" shall mean children of school age who deviate from the average in physical, mental, emotional or social characteristics to such an extent that they require special education facilities or services....

The department's regulations include the following definitions:

**Special education**—Specially designed instruction to meet the needs of an exceptional student.

**Eligible student**—An individual of school age who was receiving special education and related services as a handicapped school-aged person

... or an individual of school age who meets the criteria in paragraphs (i) and (ii).

1. Although the *Board of Education* case involved an appeal from a decision of the Secretary of Education rather than from a special appeals panel as in this case, this is the proper scope of review. See section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

(i) The individual has one or more of the following physical or mental disabilities, as set forth in Chapter 42:

. . . . .

(E) Specific learning disability.

. . . . .

(ii) The individual is determined by an IEP team, based upon recommendations in a multidisciplinary evaluation, *to need* special education.

22 Pa.Code § 14.1. (Emphasis added.)

Also of relevance is the definition of "specific learning disability", found in 22 Pa.Code § 342.1:

(i) A chronic condition of presumed neurological origin which selectively interferes with the development, integration or demonstration of language, spoken or written, or of nonverbal abilities.

(ii) *The condition manifests itself as a severe discrepancy between achievement and intellectual ability in one or more of the following areas:*

. . . . .

(C) Written expression.

. . . . .

(Emphasis added.)

The appeals panel found that Samuel had a specific learning disability in the area of written expression and that he needs special education to address the educational problems he experiences as a result of his disability.

The issue here is whether the appeals panel was correct in reaching those determinations in light of the definitions quoted above.

One of the reasons the panel disagreed with the hearing officer was that the hearing officer failed to consider Samuel's written expression ability in light of his high intelligence, an apparent recognition of the language in section 342.1, which defines specific learning disabilities as being

manifested by a severe discrepancy between intellectual ability and level of achievement.

The panel, relying on record evidence of Samuel's high I.Q., his educational history and testimony regarding his level of ability with respect to written expression, determined that a severe discrepancy exists, and thus that Samuel has a specific learning disability in the area of written expression.[2]

The district, although conceding that discrepancies between intellectual ability and level of achievement are relevant to the question of whether a specific learning disability exists, argues that, regardless of whether or not a discrepancy exists, the appeals panel erred in concluding that the Samuel is *entitled* to special education. The district points to the statutory language in section 13–1371(1) of the School Code which defines "exceptional children" as those "who deviate from the average in ... mental ... characteristics to such an extent that they require special education facilities or services." The district argues that the panel failed to recognize the quoted statutory language and language in chapter 14 of the regulations which speak in terms of a learning disabled child's "need" for special education.

Section 14.1 of the department's regulations does define the standard of "eligible student" as one who possesses a disability *and* who needs special education.

The district argues that these provisions supports its position that a student's *need* for special education is a necessary component in making a determination that a student with a specific learning disability is entitled to special education.

**2.** This court agrees with Samuel's parents position regarding the panel's scope of review of a hearing officer's decision. Although the line of cases the parents cite involved the former administrative procedure, which provided for review of hearing officers' decisions by the Secretary of Education rather than an appeals panel appointed by the Secretary, those cases remain applicable. Hence, in accordance with *Bucks County Public Schools v. Department of Education,* 108 Pa. Commonwealth Ct. 511, 529 A.2d 1201 (1987), *petition for allowance of appeal denied,* 517 Pa. 624, 538 A.2d 877 (1988), the appeals panel was not bound by the hearing officer's factual determinations.

Although the district is correct in that respect, the panel, in addition to finding that Samuel should be identified as learning disabled, determined that Samuel has a need for special education.

The regulatory provision relating to multidisciplinary evaluations, found at 22 Pa.Code § 14.25(c)(6), provides that districts shall initiate evaluations when a hearing officer or judicial decision orders an evaluation. As the panel indicated, 22 Pa.Code § 342.25(a) directs that

> "[r]eferral for multidisciplinary evaluation shall be made when special education referral criteria have been met and are in accordance with § 14.25. *Referral for multidisciplinary evaluation is indicated when the student is suspected of being exceptional and one or more of the following exist:*
>
> . . . . .
>
> (2) The instructional assessment of the student experiencing academic difficulty indicates a performance level which is not sufficient to demonstrate success in the regular classroom without the addition of supplementary aids or services, or both.

(Emphasis added.)

The regulations further require that when a student is found to be exceptional, an individualized education program (IEP) team must develop an IEP for the student. 22 Pa.Code § 342.32. The IEP team is required to develop an IEP based on the multidisciplinary evaluation.

Thus, the department in implementing its statutory directive has determined that when a child is exceptional and the child demonstrates a performance level that is not sufficient to guarantee success in the classroom *without the addition of supplementary aids or services,* a multidisciplinary evaluation is required as a tool by which an IEP team can develop an appropriate program of education.

This court disagrees with the district's interpretation of the panel's decision. The district perceives the panel decision as holding that Samuel would be receiving special

education if the hearing officer's order is affirmed, because the hearing officer indicated that modifications in the regular classroom would accommodate Samuel's needs.

However, in this court's view, the panel merely relied on the regulatory language of 22 Pa.Code § 342.25, which indicates that when supplementary aids and services are necessary to guarantee a successful classroom performance level, a multidisciplinary evaluation is required, to analyze the student's disability, which in turn will aid in the development of an IEP for his learning disability.

In this case, the panel reviewed the evidence of Samuel's past classroom performance and determined that, despite his classification as gifted, he is also a child with a learning disability whose performance level is not sufficient to guarantee success in the regular class, without the addition of supplementary aids or services, or both.

■ Finally, the district argues that substantial evidence does not support the appeals panel's necessary findings of fact. The panel noted the testimony of Samuel's parents, his teachers and experts in the area of learning disabilities. That testimony not only supports the panel's determination that Samuel has a specific learning disability in the area of written expression, but also that the disability is of a chronic nature.

The panel's finding that Samuel needs special education is supported by the testimony of Samuel's parents, who indicated that they help him in preparing written work, and Samuel's fifth grade teacher, who stated that Samuel had problems with the rate and degree of completion of his written work.

Hence, the panel's decision is affirmed.

## ORDER

Now, February 10, 1992, the decision of the Special Education Appeals Panel of the Department of Education, dated March 5, 1991, is affirmed.